UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x
ROBYN PACE,

                       Plaintiff,

      v.

FISHER PRICE,

                       Defendant.
-------------------------------------------------x

<u>MEMORANDUM AND ORDER</u>

03-CV-6474 (ILG)

GLASSER, United States District Judge:

In this action, plaintiff Robyn Pace ("plaintiff") alleges that defendant Fisher Price ("defendant") terminated her from employment because she was pregnant in violation of her civil rights. Defendant contends that it terminated plaintiff because she was not qualified for her position and company restructuring eliminated that job. Pending before the Court are defendant's motion for summary judgment and plaintiff's motion to amend her complaint.

## **FACTS**

The following material facts are undisputed unless otherwise noted. In March 1998, plaintiff began working for defendant as a Key Accounts Coordinator in its New York City office. She was later promoted to the position of Senior Key Accounts Coordinator. Plaintiff continued to work for defendant until she was laid off in February 2002 due to company restructuring. See Def. 56.1 Statement ¶ 7. In mid-March 2002, Al Karo ("Karo"), Vice President of National Accounts, recommended that plaintiff be rehired. She then returned to work for defendant as a data analyst. Id. ¶¶ 8-9. In that position, which defendant considered non-professional and hourly, plaintiff compiled and analyzed sales data, performed clerical work and prepared quote sheets. Id. ¶ 11.

1

In the fall of 2002, defendant began to consider improving the quality of its sales forecasting and data analysis. Senior-level management recommended centralizing all analyst positions into one department, which would ultimately be located in defendant's East Aurora, New York headquarters. Id. ¶ 15. Additionally, defendant decided to enhance the job qualifications for analysts in order to improve its sales forecasting. Id. ¶ 15. These recommendations were approved in December 2002. Id. Consequently, plaintiff became part of the Forecasting Department on January 20, 2003. Carol Croft ("Croft"), the head of the Sales Forecasting Department, became plaintiff's supervisor. Id. ¶ 17.

The Senior Account Analyst position that defendant sought to establish within the Forecasting Department was a professional position that required a four-year college degree in addition to substantial prior related experience. Id. ¶ 24. Plaintiff does not have a four-year degree; rather, she has a two-year associates degree in an unrelated field. Id. ¶ 26. Moreover, plaintiff had no prior experience in forecasting when she started working in that department. Id. ¶¶ 22, 25; see Pl. Dep. at 65, ln. 13-16. By March 2003, Croft determined that plaintiff did not have the requisite skills or education for the position of Senior Account Analyst in the Forecasting Department. Def. 56.1 Statement ¶ 29. In order to confirm her belief that plaintiff was not performing at the level the position demanded, Croft asked her to outline her responsibilities in writing. Plaintiff prepared a memorandum, which she emailed to Croft on March 11, 2003. See Declaration of Lawrence R. Bailey, Jr. ("Bailey Decl.") (March 4, 2005) Ex. 7(G). From that document it became clear to Croft that plaintiff was not qualified for the position of Senior Account Analyst. Def. 56.1 Statement ¶ 38.

2

Croft then began to take steps necessary to terminate plaintiff.

Plaintiff had been trying to become pregnant and, in early 2003, she sought the assistance of a fertility doctor. According to plaintiff's deposition testimony, the first time she had a conversation with Croft about her intention or efforts to become pregnant was on April 1, 2003. See Pl. Dep. at 41, ln. 14. During that conversation, plaintiff told Croft that she was having difficulty getting pregnant and that she had visited a fertility specialist. Id. at 42, ln. 5-7. Plaintiff was artificially inseminated on April 23, 2003, see id. at 33, ln. 18-21, and learned that she was pregnant on May 7, 8 or 9, 2003. Def. 56.1 Statement ¶¶ 34, 35.

On May 9, 2003, defendant's Human Resources Department began preparing plaintiff's severance package. See Bailey Decl. (March 4, 2005) Ex. 2(G) (e-mail from Human Resources Manager requesting that the severance agreement for plaintiff be prepared for her termination scheduled for May 14 or 15). On May 12, 2003, defendant made travel arrangements for Croft to meet with plaintiff in New York City and terminate her. See id. Ex. 8, Croft Aff. ¶ 4; Ex. 2(h) (travel request form). On May 13, 2003, plaintiff called Croft and told her that she was pregnant. Def. 56.1 Statement ¶ 45. On May 15, 2003, Croft told plaintiff that her position was being eliminated and that she was fired. Id. ¶ 46. Plaintiff's position in New York City was eliminated effective that date. Id. ¶ 30.

On June 5, 2003, plaintiff filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights. See Bailey Decl. (March 4, 2005) Ex. 1. On October 31, 2003, the EEOC dismissed plaintiff's charge and issued a right-to-sue notice. See id. Ex. 3. Plaintiff

commenced this action on December 23, 2003, alleging that she was wrongfully terminated in violation of her civil rights.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is precluded only where the factual issue is genuine, which means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In order to survive a motion for summary judgment, "the opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To that end, the non-moving party "may not rest upon the mere allegations or denials" in its pleadings; rather, it "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita, 475 U.S. at 587. Guided by these principles, the Court turns to the parties' arguments in this case.

### I. Defendant's Motion For Summary Judgment

Plaintiff asserts causes of action under the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), contained in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec.

4

Law § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107.[1]  Title VII provides, inter alia, that it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's ... sex."  42 U.S.C. § 2000e-2(a)(1).  In 1978, Congress amended Title VII by enacting the PDA, which states, "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes...." § 2000e(k).  Because plaintiff presents no direct evidence of discriminatory treatment in violation of Title VII, the Court applies the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Pursuant to that analysis, the plaintiff has the initial burden of proving a prima facie case by showing that:  (1) she was a member of a protected class; (2) she was qualified for the position from which she was terminated; (3) she suffered adverse employment action; and (4) the position from which plaintiff was terminated was filled by a comparably qualified, non-pregnant employee.  See id. Alternatively, plaintiff may satisfy the fourth requirement by showing that the adverse action occurred in circumstances giving rise to an inference of unlawful discrimination. See Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995).  If the plaintiff establishes a prima facie case, discrimination is presumed and the burden then shifts to the

---

[1] Claims under the PDA are analyzed in the same manner as other sex discrimination claims under Title VII.  See Humana Inc. v. Forsyth, 525 U.S. 299, 310 (1999).  Moreover, the analysis of discrimination claims under the NYSHRL and the NYCHRL is parallel to that of Title VII claims.  See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000).  Accordingly, the Court considers all of plaintiff's claims together.

employer to show a legitimate, nondiscriminatory reason for the employee's termination. McDonnell Douglas, 411 U.S. at 802. If the employer satisfies that burden, then the presumption of discrimination dissipates and the plaintiff must show that the employer's purported justification for the adverse employment action is pretextual.

In this case, plaintiff satisfies the first requirement that she was a member of the protected class because she was pregnant when she was terminated.[2] She also satisfies the third prong of the prima facie case because her discharge clearly constituted an adverse employment action. The remaining two elements, however, give the Court pause. Defendant argues that plaintiff cannot satisfy the second requirement of the prima facie case because she was not qualified for the position of Senior Account Analyst. Plaintiff does not dispute this contention. Indeed, the evidence presented by defendant establishes that plaintiff had no prior experience in forecasting when she started working in that department and that while the position requires a four-year degree, plaintiff has only a two-year degree. See Def. 56.1 Statement ¶¶ 22, 25, 26.

Even if plaintiff were qualified for the position of Senior Account Analyst, she fails to establish that her discharge occurred in circumstances giving rise to an inference of discrimination in order to satisfy the fourth element of the prima facie case.[3] Plaintiff advances two principal arguments. First, she argues that the timing of the events leading up to her termination permits the inference that her discharge was

---

[2] Defendant argues that plaintiff has failed to establish that she was a member of a protected class because it did not know that plaintiff was pregnant when it decided to fire her. The Court will discuss this argument in terms of the fourth element of the prima facie case, namely, whether plaintiff has established that her discharge occurred in circumstances giving rise to an inference of discrimination.

[3] Regarding this element of the prima facie case, plaintiff does not argue, nor has she presented evidence to show, that her position was filled by a similarly qualified, non-pregnant employee.

6

discriminatory. See Pl. Opp. at 11. Defendant contends that it had no knowledge that plaintiff was pregnant until after it decided to terminate her employment. See Def. Mem. at 11. "In cases in which the employer claims that the decision to terminate was made prior to learning of the plaintiff's protected status, the plaintiff must also 'adduce some evidence, whether direct or indirect, indicating a defendant's knowledge' of the plaintiff's membership in the protected class." Stainkamp v. Changes Int'l, 373 F. Supp. 2d 163, 166 (E.D.N.Y. 2005) (citing Woodman v. WWOR-TV, Inc., 411 F.3d 69, 82 (2d Cir. 2005)). See also Prebilich-Holland v. Gaylord Ent'mt Co., 297 F.3d 438, 443-44 (6th Cir. 2002) (holding that an employer must have actual knowledge of the employee's pregnancy in order to infer that the employer discriminated against her); accord Clay v. Holy Cross Hosp., 253 F.3d 1000, 1007 & n.7 (7th Cir. 2001); Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996). Thus, courts hold that "'a defendant's discriminatory intent cannot be inferred, even at the prima facie stage, from circumstances unknown to the defendant.'" Stainkamp, 373 F. Supp. 2d at 166 (quoting Woodman, 411 F.3d at 82)).

In this case, Croft determined that plaintiff was not qualified for the position of Senior Account Analyst and should therefore be terminated in March 2003. Plaintiff does not present any evidence to rebut defendant's showing that it made the decision to terminate her in March 2003, long before she informed Croft that she was trying to become pregnant on April 1, 2003 or that she was pregnant on May 13, 2003. See Def. Mem. at 12. Indeed, plaintiff concedes that the first conversation she had with Croft regarding her efforts to become pregnant occurred on April 1, 2003. See Pl. Opp. at 11. In the absence of evidence that defendant knew plaintiff was pregnant when it decided

7

to terminate her employment, the circumstances of plaintiff's discharge do not permit an inference of discrimination. See Stainkamp, 373 F. Supp. 2d at 168 (granting summary judgment for defendant where plaintiff failed to show that the individual who decided to terminate her knew she was pregnant).

Second, plaintiff argues that discrimination can be inferred from statements Karo made to her between July 2002 and January 2003. Specifically, she alleges that Karo stated, "you can't get pregnant and you can't leave us." Plaintiff asserts that she responded, "I can't afford not to work. Even if I get pregnant I will still be back." Def. 56.1 Statement ¶ 63. In order to establish that Karo's comments are evidence that her termination was discriminatory, plaintiff argues that he continued to supervise her after she became part of the Forecasting Department and therefore he had decision-making authority regarding her discharge. See Pl. Opp. at 3, 13; Pl. 56.1 Statement at ¶¶ 17, 68; Pl. Aff. at ¶ 4. This argument, however, contradicts plaintiff's deposition testimony that Croft was her supervisor in the Forecasting Department, while Karo was her supervisor when she was a data analyst. See Pl. Dep. at 83, ln. 13-14; 85, ln. 22-25 . "The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing [her] own prior sworn testimony." Brown v. U.S., 2005 WL 1503921, at *3 (E.D.N.Y. June 24, 2005) (Glasser, J.). Accordingly, the Court rejects this argument. In any event, plaintiff has not presented any evidence to establish that Karo knew plaintiff was trying to get pregnant when defendant decided to terminate her employment in March 2003 or that he participated in that decision. See Bailey Decl. (March 4, 2005) Ex. 2(B), Karo Aff. ¶ 4.

The Court has considered plaintiff's other arguments and finds that they fail to establish that her discharge occurred in circumstances giving rise to an inference of discrimination. Accordingly, because plaintiff has failed to establish a prima facie case of pregnancy discrimination, summary judgment is granted for defendant.[4]

## II. Plaintiff's Motion to Amend

In her memorandum of law dated April 22, 2005, plaintiff cross-moves to amend her complaint to include retaliation as a basis for her wrongful termination. See Pl. Opp. at 22. In a Scheduling Order dated June 28, 2004, Magistrate Judge Viktor V. Pohorelsky ordered the parties to file any motions to amend pleadings by September 30, 2004. See Bailey Reply Decl. (May 20, 2005) Ex. D ¶ 3(c). Plaintiff's request to amend her complaint almost seven months after the deadline set by Judge Pohorelsky is untimely and therefore is denied.

## CONCLUSION

---

[4] Having found that plaintiff fails to establish a prima facie case of discrimination, the Court does not reach whether defendant established that it had a legitimate, nondiscriminatory reason for terminating plaintiff.

For the reasons stated above, the Court grants summary judgment for defendant as to plaintiff's pregnancy discrimination claims and denies plaintiff's motion to amend her complaint. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: December 9th, 2005
  Brooklyn, New York

  S/_____
  I. Leo Glasser
  United States District Judge

Copies of the foregoing were sent on this day to:

Becky Tung
Leeds Morelli & Brown, P.C.
One Old Country Road, Suite 347
Carle Place, New York 11514


Lawrence R. Bailey, Jr.
Hodgson Russ LLP
152 West 57th Street
New York, NY 10019